No. 85,916
No. 85,917

MELINDA SKOV, RAYMOND TANKERSLEY, and NORMA TANKERSLEY, *Appellants/Cross-appellees*, v. VANCE WICKER and MONA WICKER, *Appellees/Cross-appellants*.

MONA BOYDSTON WICKER, *Appellee/Cross-appellant*, v. SEAN BOYDSTON (Melinda Skov, Raymond Tankersley, and Norma Tankersley), *Appellants/Cross-appellees*.

(32 P.3d 1122)

Opinion filed October 19, 2001.

*Thomas D. Arnhold*, of Hutchinson, was on the brief for appellants/cross-appellees.

*Nancy J. Andervich*, of Kansas Legal Services, of Hutchinson, argued the cause and was on the brief for appellees/cross-appellants.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a grandparent visitation matter. It is the consolidated appeal of rulings in two cases that are adverse to Melinda Skov, Norma Tankersley, and Raymond Tankersley. They filed a post-decree motion pursuant to K.S.A. 2000 Supp. 60-1616(b) in the divorce action of Skov's daughter, Mona Wicker, from Sean Boydston seeking court-ordered visitation rights to the children, H.B. and T.B., Case No. 85,917. Their motion was overruled. Skov and the Tankersleys also filed suit pursuant to K.S.A. 38-129(a) against Mona and her current husband, Vance Wicker, seeking court-ordered visitation rights to the child, V.W., Case No. 85,916. The district court dismissed their petition. The Wickers cross-appeal.

Skov is the grandmother of the children. Norma Tankersley is Skov's mother and the great-grandmother of the children. Raymond Tankersley was married to Norma Tankersley and was the step great-grandfather of the children. The court was advised in July 2001 of Mr. Tankersley's death.

The district court overruled the Skov/Tankersley post-decree motion and dismissed their petition on the grounds that K.S.A. 2000 Supp. 60-1616(b) and K.S.A. 38-129(a) are unconstitutional. Skov and the Tankersleys appeal from the rulings. Mona Wicker cross-appeals from the district court's ruling that great-grandparents are grandparents within the meanings of the statutes.

The appellants' motion in the divorce action and their separate petition were dismissed with no evidence having been adduced. The following facts are taken from the pleadings and court records in the district court cases.

Case No. 85,917. Mona Wicker was granted a divorce from Sean Boydston in May 1991. Joint custody, with Mona Wicker having residential custody and Sean Boydston having reasonable rights of visitation, was ordered. There were many subsequent filings and proceedings having to do with child support payments and child custody. In March 1999, the district court ordered the parties to attend mediation to resolve their custody or visitation issues, which resulted in an agreement that Mona Wicker would retain residential custody. In November 1999, the court ordered Boydston to resume paying child support and providing health insurance.

In April 2000, Skov and the Tankersleys filed their motion pursuant to K.S.A. 2000 Supp. 60-1616(b) seeking an order for visitation rights. Movants stated:

"1. That in the past they have had significant contact with the parties' minor children, [H.B. and T.B.].

"2. That [Mona Wicker] currently has residential custody of the minor children.

"3. That [Mona Wicker] is failing and refusing to allow the grandmother and great-grandparents to have any visitation with the minor children.

"4. That the grandmother, Melinda Skov, and the great-grandparents desire to have set and regular visitation, including summer visitation."

Mona Wicker opposed the motion for visitation rights.

Case No. 85,916. In April 2000, Skov and the Tankersleys filed a petition against Vance and Mona Wicker. They alleged

"[t]hat the plaintiffs bring this petition pursuant to K.S.A. 38-129, which allows the District Court to grant the grandparents of an unmarried minor child reasonable visitation rights to the child during the child's minority upon finding that visitation rights would be in the child's best interests and when a substantial relationship between the child and grandparent has been established."

They sought "regular and specific visitation rights with their granddaughter and great-granddaughter, [V.W.]."

The Wickers filed a motion to dismiss the petition.

Counsel argued the motions to the district court. At the hearing, the district court expressed agreement with the Wickers. The dis-

trict court later filed an order of dismissal in each case. In essence, the orders state:

1. The term "grandparent" in the statutes includes great-grand-parents.

2. Raymond Tankersley, who is the step great-grandparent of the children, is not a grandparent within the meaning of the statutes.

3. Absent a finding of unfitness, under *Troxel v. Granville*, 530 U.S. 57, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000), a parent has the right to decide with whom his or her child has contact.

4. In view of *Troxel*, the Kansas statutes regarding grandparent visitation, K.S.A. 2000 Supp. 60-1616(b) and K.S.A. 38-129, are unconstitutional.

The first issue raised on appeal is whether K.S.A. 38-129(a) is unconstitutional. Mona Wicker concedes that this court's decision in *Kansas Dept. of S.R.S. v. Paillet*, 270 Kan. 646, 16 P.3d 962 (2001), controls and that the district court erred in ruling that K.S.A. 38-129(a) is unconstitutional under *Troxel*. Thus, Case No. 85,916 must be remanded for further proceedings in accordance with *Paillet*.

Mona Wicker does not concede that K.S.A. 2000 Supp. 60-1616(b) is constitutional. Her position on the constitutionality of 60-1616(b) is that the district court correctly concluded that it is unconstitutional on its face. She argues that the complete lack of limitations on the district court's authority to grant visitation rights and the lack of any deference to the wishes of the parents could not pass the due process standard established in *Troxel* and applied by this court in *Paillet*. She further argues that the statute cannot be construed so that it satisfies the due process requirements set out in *Troxel*.

The appellants' arguments do not take *Paillet* into account. This court issued its opinion in *Paillet* after appellants' brief was filed; they did not file a reply brief or a cross-appellees' brief.

In deciding *Paillet*, this court did not find K.S.A. 38-129 unconstitutional on its face. The court, however, found that the statute had been unconstitutionally applied. 270 Kan. at 660. The court stated:

"K.S.A. 38-129 requires a finding of both the best interests of the child and a substantial relationship established with the grandparents. Neither requirement is called into question by the Supreme Court's decision in *Troxel*. However, since we have determined that the Paillets did not meet their burden of proof as to both requirements of the statute, it would serve no purpose to remand the matter to the district court." 270 Kan. at 660.

Mona Wicker contends that K.S.A. 2000 Supp. 60-1616(b), on its face, does not satisfy the due process requirements set out in *Troxel*. The statute, which is part of the divorce and maintenance provisions of article 16 of the civil procedure chapter, provides in its entirety: "Grandparents and stepparents may be granted visitation rights." K.S.A. 2000 Supp. 60-1616(b). The statute places no limitations on the district court's discretion to grant visitation rights to grandparents.

The question of the constitutionality of K.S.A. 2000 Supp. 60-1616(b) requires an interpretation of the statute. The court's review of a question of law is unlimited. We presume that a statute is constitutional and resolve doubts in favor of its validity. "This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if this can be done within the apparent intent of the legislature in passing the statute." *State v. Martinez*, 268 Kan. 21, Syl. ¶ 2, 988 P.2d 735 (1999).

First, Mona Wicker argues that the apparent intent of the legislature will not permit a constitutional construction of K.S.A. 60-1616(b). She contends that the legislature intended for there to be no limitations on grandparent visitation that can be ordered in a divorce action and that the intention can be ascertained from comparison of the legislature's enacting the current forms of 60-1616(b) and 38-129(a). She would have the court compare L. 1982, ch. 152, § 15 with L. 1982, ch. 182, § 149. Her basic contention is that the two statutory provisions were enacted in the same legislative session, from which we reasonably can infer that the legislature intended them to serve different purposes and intended that 38-129 should be conditional and 60-1616(b) should not. Examination of the session laws does not bear out her argument.

Chapter 152 of the 1982 Session Laws is an act concerning domestic relations and divorce. In that act, the legislature repealed

the grandparents' visitation rights provision from K.S.A. 1981 Supp. 60-1610. L. 1982, ch. 152, § 9. The repealed subsection provided a means for the parents of a noncustodial parent who did not or could not exercise his or her visitation rights to petition for visitation rights on their own account. The subsection was repealed when joint custody was instituted in the same enactment. L. 1982, ch. 152, § 9. A new visitation section was created that included the current provision for grandparent and stepparent visitation. L. 1982, ch. 152, § 15.

Subsection (a) of K.S.A. 38-129 was enacted in 1971. The legislature made no substantive changes to it in 1982. With the insubstantial word changes made in 1982, it provided:

"If either the father or mother of an unmarried minor child is deceased, the parents of such deceased person may be granted reasonable visitation rights to the minor child during its minority by the district court upon a finding that such visitation rights would be in the best interests of the minor child." L. 1971, ch. 149, § 1.

In 1982, the legislature added new subsection (b) to K.S.A. 38-129. L. 1982, ch. 182, § 149. It authorized the district court to grant or enforce visitation rights to the grandparents of a child who has been adopted by the new spouse of the surviving parent. The new subsection provided:

"*(b) Unless the court finds that the visitation rights are not in the child's best interests, the district court may grant visitation rights, or enforce visitation rights previously granted, pursuant to this section, even if the surviving parent has remarried and the surviving parent's spouse has adopted the child. Visitation rights may be granted pursuant to this subsection without regard to whether the adoption of the child occurred before or after the effective date of this act.*" L. 1982, ch. 182, § 149.

Thus, in 1982 60-1616(b) governed grandparent visitation rights where the parents were divorced, and 38-129 governed grandparent visitation rights where one parent was deceased.

In 1984, the legislature greatly broadened 38-129(a) by eliminating the need for a parent to be deceased in order for the grandparents to be eligible for court-ordered visitation rights pursuant to the provision:

"(a) ~~If a parent of an unmarried minor child is deceased,~~ The district court may grant the ~~parents of the deceased person~~ *grandparents of an unmarried minor child* reasonable visitation rights to the ~~minor~~ child during the child's minority upon a finding that the visitation rights would be in the *child's* best interests *and when a substantial relationship between the child and the grandparent has been established* ~~of the minor child.~~" L. 1984, ch. 152, § 1.

This examination of the legislative evolution of the current provisions, K.S.A. 2000 Supp. 60-1616(b) and K.S.A. 38-129(a), does not bear out Mona Wicker's contention. The basis for her argument was that the two provisions were enacted in the same session in 1982 for two different purposes. K.S.A. 38-129(a), however, was enacted in 1971, insubstantially modified in 1982, and substantially broadened in 1984.

Second, Mona Wicker argues that there is no way the court can construe K.S.A. 2000 Supp. 60-1616(b) so that it satisfies due process without contravening legislative intent. The obvious way to give the statute a constitutional construction would be to read the limitations of 38-129(a) into it. Mona Wicker, however, contends that the legislature's enacting a separate, unlimited provision for grandparent visitation in divorce actions demonstrates its intent to permit unlimited grandparent visitation rights in divorce circumstances. We disagree.

With the amendment in 1984 of 38-129(a), it became the more general of the two grandparent visitation statutes. K.S.A. 2000 Supp. 60-1616(b) applies in the specific situation where the parents are divorced. K.S.A. 38-129(a) applies generally. It is well established that "[g]eneral and special statutes should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling." *In re Estate of Antonopoulos*, 268 Kan. 178, Syl. ¶ 6, 993 P.2d 637 (1999). In this case, the difference between the two statutes is the absence of limitations in 60-1616(b), and it is that absence that runs afoul of the reasoning of *Paillet* and *Troxel*.

In *In re Adoption of Baby Boy L.*, 231 Kan. 199, 223, 643 P.2d 168 (1982), we said:

"In examining the constitutionality of any statute there are certain basic principles which must be adhered to:

'We start with the proposition that the constitutionality of a statute is presumed; that all doubts must be resolved in favor of its validity, and before the statute may be stricken, it must clearly appear the statute violates the Constitution. It is the court's duty to uphold the statute under attack, if possible, rather than defeat it. If there is any reasonable way a statute may be construed constitutionally permissible, that should be done.' *Board of Greenwood County Comm'rs v. Nadel,* 228 Kan. 469, Syl. § 1, 618 P.2d 778 (1980).

'A statute, apparently valid upon its face, may be unconstitutional in its application to a particular set of facts, circumstances or classifications.' *Flax v. Kansas Turnpike Authority,* 226 Kan. 1, Syl. § 6, 596 P.2d 446 (1979).

"The corollary of *Flax,* of course, is that a statute apparently void on its face may be constitutional when limited and construed in such a way as to uphold its constitutionality by reading the necessary judicial requirements into the statute. This has often been done when it is clear that such an interpretation will carry out the intent of the legislature. *State v. Motion Picture Entitled 'The Bet,'* 219 Kan. 64, 70, 547 P.2d 760 (1976); *State v. Gunzelman,* 210 Kan. 481, 502 P.2d 705 (1972); *State v. Hart,* 200 Kan. 153, 434 P.2d 999 (1967)."

In *State v. Motion Picture Entitled 'The Bet,'* 219 Kan. 64, 547 P.2d 760 (1976), this court considered a constitutional challenge based on the definition of obscene material in K.S.A. 21-4301(2)(Weeks). That definition did not conform to the constitutional requirements as stated by the United States Supreme Court in *Miller v. California,* 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973). The district court, however, found the films to be obscene by construing the statute to conform to the requirements of the *Miller* decision. The district court simply read the *Miller* requirements into our statute. We affirmed, stating: "This court has on previous occasions seen fit to construe and limit criminal statutes in such a way as to uphold their constitutionality by reading judicial requirements into statutes which otherwise were overbroad." 219 Kan. at 70. Here, the intent of the legislature is to provide for grandparent visitation in divorce actions. We have the authority and duty to construe K.S.A. 2000 Supp. 60-1616(b) to carry out that intent in a constitutional manner.

K.S.A. 2000 Supp. 60-1616(b) and K.S.A. 38-129(a) can be harmonized and construed as constitutionally valid by reading the limitations of the latter into the former. We construe K.S.A. 2000

Supp. 60-1616(b) to include the requirements set out in K.S.A. 38-129(a) and conclude the district court erred in holding that it was unconstitutional. Thus, Case No. 85,917 must also be remanded, and on remand appellants have the burden of proving that such visitation is in the child's best interest and that a substantial relationship with the grandchildren exists. In addition, the district court must give special weight to the fundamental presumption that a fit parent will act in the best interests of his or her child.

The final issue raised by the appellants is whether Norma Tankersley's husband, Raymond Tankersley, the step great-grandfather of the children, is a grandparent within the meaning of the statutes. On July 24, 2001, appellants' attorney filed a motion in which it is stated that Raymond Tankersley died. This issue, therefore, is moot.

We next turn to Mona Wicker's cross-appeal in which she challenges the trial court's ruling that the term "grandparent" in the statute includes great-grandparent. Wicker directs the court's attention to the rule of statutory construction that calls for strict construction of a statute that imposes limitations on the power to exercise a fundamental constitutional right. See *Eveleigh v. Conness*, 261 Kan. 970, Syl. ¶ 3, 933 P.2d 675 (1997). In this case, the pertinent statutes impose limitations on a parent's power to exercise the fundamental right to make decisions about the care and custody of her or his children. See *Troxel*, 530 U.S. at 66. Wicker relies on *In re Hood*, 252 Kan. 689, 847 P.2d 1300 (1993), and *Sowers v. Tsamolias*, 262 Kan. 717, 941 P.2d 949 (1997), in arguing that this court already has established a pattern of strictly construing the grandparent visitation statute. In *Hood*, an unrelated third party who claimed a "grandparent like" relationship with the minor child sought visitation rights under K.S.A. 38-129. The court held that the grandparent visitation statute does not grant standing to an unrelated third party. 252 Kan. 689, Syl. ¶ 1. In *Sowers*, the natural grandparents of a child sought visitation rights under K.S.A. 38-129 after the child had been adopted by foster parents. The petitioners were raising the sister of the child who had been adopted. 262 Kan. 717. Dismissal of their petition was affirmed on the ground that adoption created new grandparents as well as new

parents and the biological grandparents were no longer grandparents within the meaning of K.S.A. 38-129. 262 Kan., 717, Syl. ¶ 1. The court in *Hood* and *Sowers* construed the term "grandparents" in the statute very narrowly in holding that it may not be extended to an unrelated person and does not include blood relatives whose legal status as grandparents was altered by adoption. Neither *Hood* nor *Sowers* is directly controlling of the present case, but the precedent of strict construction of the term "grandparents" in K.S.A. 38-129 is persuasive and will be followed in the absence of some reason to the contrary.

Appellants provide no such reason. They concede that neither K.S.A. 2000 Supp. 60-1616(b) nor K.S.A. 38-129(a) expressly permits visitation to great-grandparents. Without citing authority or developing a rationale, they simply assert the belief that the district court correctly included great-grandparents within the meaning of the statutes. We therefore strictly construe the statutes and conclude that great-grandparents are not included within the term "grandparents."

Reversed and remanded with directions.