No. 122,737

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EUGENE R. FROST AND VICTORIA S. FROST,
*Appellants*,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES,
*Appellee*.

SYLLABUS BY THE COURT

1.

By law, orders arising under the revised Kansas Code for Care of Children proceedings take precedence over orders from other courts. K.S.A. 2019 Supp. 38-2201(a).

2.

An appellate court presumes statutes are constitutional and must resolve all doubts in favor of a statute's validity. Further, the appellate court must interpret a statute in a manner rendering it constitutional if there is any reasonable construction that will maintain the Legislature's apparent intent. A statute must clearly violate the constitution before it may be struck down.

3.

One panel of the Court of Appeals may disagree with a previous panel of the same court.

4.

In Kansas, judicial power extends only to cases and controversies. A court cannot decide a case if the plaintiff could not show a causal connection between their injury and the defendant's conduct, or if the dispute was not yet fixed and final, but instead contingent or hypothetical.

Appeal from Johnson District Court; PAUL W. BURMASTER, judge. Opinion filed March 5, 2021. Affirmed.

*Linus L. Baker*, of Stilwell, for appellants.

*Marc Altenbernt*, *Corliss Scroggins Lawson*, *and Rae A. Nicholson*, of Kansas Department for Children and Families, for appellee.

Before MALONE, P.J., HILL and BUSER, JJ.

HILL, J.: This appeal arises from a district court's dismissal of a grandparent visitation petition. When the petition was filed, the children were in State custody and the grandparents were already bound by an outstanding no-contact order issued in a child in need of care case. By law, orders in CINC cases take priority over orders from other courts. Pursuing a different option, the grandparents then sued the parents of their grandchildren and the Department for Children and Families, seeking an order granting them visitation. The court dismissed their petition for want of jurisdiction. When doing so, it followed a ruling of a prior panel of this court that held that the 2011 codification of the Family Code and 2012 amendments to that Code limited grandparent visitation only to divorce cases. We disagree with that panel's conclusion. In our view, grandparents did not gain or lose any visitation rights by the legislative action in 2011 and 2012. But after reviewing the statutes, the cases, and the record, we conclude that the court properly dismissed the grandparents' petition but not for the reason it cited. Thus, we affirm.

2

*Three Child in Need of Care cases are ongoing.*

Eugene and Vicki Frost are the maternal grandparents of four grandchildren through their daughter. In August 2019, the Department for Children and Families took custody of three of those grandchildren in three Child in Need of Care cases in Johnson County District Court. The Frosts are interested parties in the CINC cases. The fourth grandchild, born after the CINC cases began, is not a subject of this appeal.

The order prohibiting the Frosts' contact with the children arose during a review hearing after several parties questioned the Frosts' conduct. The children's guardian ad litem, the mother's attorney, the children's foster parents, and the paternal grandmother, all stated that the Frosts were hindering progress towards reintegration of the family. The guardian ad litem told the court that he and the social worker overseeing the case agreed that contact with the Frosts was not in the grandchildren's best interests. The court stopped the Frosts' visitation with the grandchildren and ordered the Frosts not to contact them. But it did not revoke the Frosts' interested person status in the cases.

The Frosts filed a separate civil action in Johnson County seeking visitation with all four children. That petition named the mother and her husband, DCF, and the paternal grandparents as respondents. The petition alleges that the Frosts had cared for the children and had a substantial relationship with them. Even though the Frosts named other parties as respondents in their petition, this dispute is between only the Frosts and DCF. The Frosts moved for default judgment against DCF, but nothing in the record shows that the mother, her husband, or the paternal grandparents were involved in the district court proceedings or in this appeal.

For authority, the Frosts relied on K.S.A. 2019 Supp. K.S.A. 23-3301(a). Under that statute, a court may grant grandparents and stepparents visitation rights "[i]n an action under article 27 of chapter 23 of the Kansas Statutes Annotated." An article 27-

chapter 23 action is a divorce action. See K.S.A. 2019 Supp. 23-2701 et seq. But they argued that an opinion of this court had extended grandparent visitation to other types of cases.

They were referring to *In re T.N.Y.*, 51 Kan. App. 2d 956, 360 P.3d 433 (2015), where maternal grandparents moved for visitation rights in a paternity case. In that case, a panel of this court concluded that the language in the statute limited grandparent visitation only to divorce cases and this limitation violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it treated children of unmarried parents differently than children of married parents. The panel severed that language from the statute and remanded so that the district court could consider the motion on its merits. 51 Kan. App. 2d at 968-70.

In response to the Frosts' grandparent visitation petition, DCF moved to dismiss the petition as moot because orders in the CINC proceedings would take precedence under K.S.A. 2019 Supp. 38-2201(a) and DCF would not have custody of the grandchildren once the CINC cases ended. DCF later refined its position by arguing the controversy was not ripe. In other words, the CINC orders would preempt any district court order here. And it was unclear what the children's custodial status would be after the CINC case closed. There was no relief to be granted. DCF also argued that the Frosts were trying to circumvent the CINC court's no-contact order.

We have no transcript of the hearing when the district court announced its ruling. But in its journal entry, the court found that it lacked jurisdiction to hear the Frosts' petition under K.S.A. 2019 Supp. 23-3301, so it dismissed the case.

The district court rejected the Frosts' argument that this court's decision in *T.N.Y.* had extended grandparent visitation to other family law contexts or allowed for independent actions for grandparent visitation. The district court pointed out that another

4

panel of this court had considered and rejected that same argument in *Baker v. McCormick*, 52 Kan. App. 2d 899, 380 P.3d 706 (2016). In that case, the panel held that *T.N.Y.* did not apply beyond its setting, so it extended grandparent visitation only to paternity actions. 52 Kan. App. 2d at 909-11. Thus, the court declined to extend the *T.N.Y.* holding to a protection from abuse case. Like *Baker*, this case is neither a divorce action (as the statute allows for), nor a paternity action as permitted in the holding in *T.N.Y.* The district court found that it lacked statutory authority to hear the Frosts' case. The court therefore found that all other issues in the case were moot and declined to address them.

The basic issue the Frosts raise is jurisdiction—whether K.S.A. 2019 Supp. 23-3301(a) even allows grandparents to bring a visitation action independently from a divorce or paternity case. The district court found that the statute did not allow for it, so it dismissed the action without reaching any other issues. The Frosts contend on appeal that the district court's interpretation was incorrect. This interpretation will be the focus of our examination.

Alternatively, the Frosts argue that if the statute *does* limit grandparent visitation actions to divorce or paternity cases, then it violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. They also mention a due process claim in passing. But they did not raise that issue in the district court and have not explained why it is properly before this court for the first time on appeal. Relying on the rule in *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018), we hold that this failure to assert an exception for raising a constitutional issue for the first time on appeal waives the issue for appellate review.

*Grandparent visitation rights were created by acts of the Legislature.*

To properly resolve the district court's jurisdiction here, we must begin with a review of the history of grandparent visitation in Kansas. After that, we will examine two appellate opinions that have addressed the issue of grandparent visitation in two causes of action. The first, *In re T.N.Y.*, is a paternity case. The second, *Baker*, involves a PFA filing. At that point, we explain why we disagree with the holding in *T.N.Y.* which held that grandparent visitation was somehow limited by some legislative enactments in 2011 and 2012. Because *T.N.Y.* is horizontal precedent, we are not bound by its ruling. In *Baker*, we agree with the panel's holding that the ruling in *T.N.Y.* is limited to paternity cases. But this does not mean that the Frosts prevail because the relief they seek cannot be granted by the party they sue—DCF. We will conclude with our explanation of that point.

Grandparents had no right to visitation at common law, but in 1971, the Kansas Legislature enacted its first grandparent-visitation statute—K.S.A. 38-129. That statute limited visitation to cases in which the mother or father of a minor child had died. L. 1971, ch. 149, § 1; see *Browning v. Tarwater*, 215 Kan. 501, 503, 524 P.2d 1135 (1974).

In 1984, the Legislature expanded the scope of grandparent visitation by amending K.S.A. 38-129 to permit grandparent visitation upon a finding that there was a substantial relationship with the child and that it was in the best interests of the child. This law also focused on visitation with adopted children or orphans.

And before 2011, a different statute—K.S.A. 60-1616(b)—gave district courts the authority to grant grandparent visitation in divorce actions. In a case involving a petition for grandparent visitation, our Supreme Court made the following observation about how these two statutes worked together:

6

"With the amendment in 1984 of [K.S.A.] 38-129(a), it became the more general of the two grandparent visitation statutes. K.S.A. 2000 Supp. 60-1616(b) applies in the specific situation where the parents are divorced. K.S.A. 38-129(a) applies generally." *Skov v. Wicker*, 272 Kan. 240, 246, 32 P.3d 1122 (2001).

In that case, the court looked for the intent of the Legislature and construed a general statute and a specific statute in harmony. By doing so, the court ruled they were constitutional:

"Here, the intent of the legislature is to provide for grandparent visitation in divorce actions. We have the authority and duty to construe K.S.A. 2000 Supp. 60-1616(b) to carry out that intent in a constitutional manner.

"K.S.A. 2000 Supp. 60-1616(b) and K.S.A. 38-129(a) can be harmonized and construed as constitutionally valid by reading the limitations of the latter into the former. We construe K.S.A. 2000 Supp. 60-1616(b) to include the requirements set out in K.S.A. 38-129(a) and conclude the district court erred in holding that it was unconstitutional." 272 Kan. at 247-48.

By harmonizing these two laws, our Supreme Court at that time recognized that the Legislature intended grandparents to have visitation in more than just divorce cases.

*The Legislature organizes a new family code.*

By 2011, grandparents in Kansas could file separate actions seeking visitation with their grandchildren and seek similar relief in pending divorce cases. During that year, the Legislature recodified the paternity and divorce statutes into a Family Law Code found in Chapter 23 of the statutes. During the recodification, the Legislature transferred K.S.A. 38-129 to K.S.A. 2011 Supp. 23-3302 and K.S.A. 60-1616(b) to K.S.A. 2011 Supp. 23-3301. See L. 2011, ch. 26, §§ 29, 47.

7

The next year, in 2012, the Legislature amended the Family Law Code by combining all of these laws into one statute. The language previously found in K.S.A. 2011 Supp. 23-3302 moved to subsections (b) and (c) of K.S.A. 2012 Supp. 23-3301. The Legislature also moved the language stating that a court may grant grandparent visitation rights in divorce cases to K.S.A. 2012 Supp. 23-3301(a). See L. 2012, ch. 162, § 54.

The Legislature has not amended the statute since 2012. We will display the entire statute—K.S.A. 2019 Supp. 23-3301—when we begin our analysis of the law.

The *T.N.Y.* panel made a thorough examination of all of this statutory background. And when the panel reviewed the legislative history, it found that the Legislature did not intend for the 2012 amendments to be substantive. The panel reviewed various memoranda from the Judicial Council and the Kansas Bar Association:

"Our review of the legislative history relating to the 2012 amendment reveals there was no intent to make any substantive changes to the Kansas Family Law Code. The amendment to K.S.A. 2011 Supp. 23-3301 began as part of House Bill 2741, which was proposed by the Kansas Judicial Council as 'clean-up amendments to the recodified domestic relations statutes.' . . . Further, the Kansas Judicial Council submitted written testimony in support of House Bill 2741's amendment to K.S.A. 2011 Supp. 23-3301—as well as an amendment to K.S.A. 2011 Supp. 23-3302—which stated:  'The amendments contained in these two sections merely reorder the provisions so that 23-3301 authorizes the court to grant visitation rights to grandparents and stepparents, while 23-3302 deals with modification of such orders. *The changes are not substantive*.'" 51 Kan. App. 2d at 967.

The *T.N.Y.* panel also reviewed written testimony offered to the Legislature:

"Similarly, the Kansas Bar Association submitted written testimony explaining that 'HB 2741 was introduced as a measure to correct any oversights that may have occurred' when implementing Senate Bill 24 in the previous year. Memorandum from Joseph

8

Molina, Kansas Bar Association, to Chairman Lance Kinzer and Members of the House Judiciary Committee, March 13, 2012.

"Although House Bill 2741 died in the Senate Judiciary Committee after passing the House, it was resurrected in Senate Bill 304—which was introduced on March 1, 2012. The Senate Bill dealt mainly with the implementation of a certified batterer intervention program. But a conference committee later included the amendments to K.S.A. 2011 Supp. 23-3301 and K.S.A. 2011 Supp. 23-3302 in Senate Bill 304. In fact, the Kansas Judicial Council's website provides that Senate Bill 304 'contains provisions from [HB 2741] proposing clean-up amendments to the recodified domestic relations statutes.' . . . The Governor ultimately signed Senate Bill 304 into law on May 25, 2012. In summarizing Senate Bill 304, the Kansas Legislative Research Department simply states that 'the bill fixes *non-substantive* errors and omissions in 2011 SB 24, which recodified several domestic relations statutes.'" 51 Kan. App. 2d at 967.

But the panel was not persuaded by this legislative history and ruled that these legislative actions did change the law permitting grandparent visitations and limited those rights to divorce cases. "We, therefore, conclude that the current version of K.S.A. 2014 Supp. 23-3301 only authorizes a district court to grant grandparent visitation in proceedings involving the dissolution of a marriage." *T.N.Y.*, 51 Kan. App. 2d at 963.

*Why we depart from T.N.Y.*

First, our facts differ from those in *T.N.Y.* In *T.N.Y.*, a father brought a paternity action to establish custody over his child. The district court adopted paternity orders and a parenting plan submitted by the mother and father, and the grandparents filed for visitation rights. The district court denied their request because it found that K.S.A. 2014 Supp. 23-3301(a) provided for grandparent visitation only in divorce cases and this was a paternity action. Here, the Frosts seek a visitation order in an independently filed case.

9

Next, the *T.N.Y.* panel found that the plain and unambiguous language of the 2012 law restricts grandparent visitation to divorce actions only, because those are article 27 chapter 23 actions. 51 Kan. App. 2d at 962-63. In other words, by compiling the several laws into one statute, grandparents lost their previously recognized right to file an independent action seeking visitation. It is from this holding that we depart.

Our method of statutory interpretation is straightforward. First, by considering the entire article where the statute is found and heeding its history, and closely reading the statute itself, we do not interpret the law in a way that renders it unconstitutional. In our view, the 2011 codification and the 2012 amendment left the law of grandparent visitation unchanged—it was just moved. Grandparents neither gained anything from these enactments, nor did they lose anything. In other words, grandparents can still file an independent action seeking visitation based on the conditions specified in the law or file motions for visitation in divorce cases.

For ease of reference, we repeat the statute regarding grandparent and stepparent visitation rights, recognizing that it has remained unchanged since its amendment in 2012:

> "(a) In an action under article 27 of chapter 23 of the Kansas Statutes Annotated, and amendments thereto, grandparents and stepparents may be granted visitation rights.

> "(b) The district court may grant the grandparents of an unmarried minor child reasonable visitation rights to the child during the child's minority upon a finding that the visitation rights would be in the child's best interests and when a substantial relationship between the child and the grandparent has been established.

> "(c) The district court may grant the parents of a deceased person visitation rights, or may enforce visitation rights previously granted, pursuant to this section, even if the surviving parent has remarried and the surviving parent's spouse has adopted the child. Visitation rights may be granted pursuant to this subsection without regard to

10

whether the adoption of the child occurred before or after the effective date of this act."
K.S.A. 2019 Supp. 23-3301.

Upon reading this statute in context with its companions, several things lead us to doubt that the Legislature restricted its application to divorce cases as the *T.N.Y* panel ruled. First is its location in a separate article.

In jurisprudence, there is seldom a single statute. Most often, they are found in clusters. In Kansas, our laws are grouped into articles. Thus, a cluster of these laws—so grouped—are an expression of the total public policy that the Legislature wishes to enforce. Thus, any court seeking to interpret a statute must consider all the laws in an article to understand fully the intent of the Legislature. This statute—K.S.A. 2019 Supp. 23-3301—is no exception to such a group consideration.

This law is the first statute in a separate article—article 33—entitled Third Party Visitation. It is not part of the statutes that deal with divorce cases found in article 27. Secondly, the subtitle of the statute communicates this law deals with rights and not procedures. Third, there are no words in this statute that says it applies only to divorce cases. True, subsection (a) deals with such cases, but subsections (b) and (c) do not. Just because a comes before b and c in the alphabet, it does not follow that (a) controls (b) and (c). We view this statute just as the *Skov* court did when it compared K.S.A 38-129 and K.S.A 60-1616(b)—the statutory ancestors of K.S.A. 2019 Supp. 23-3301. The court construed them in harmony and ruled they were constitutional, and we believe K.S.A. 2019 Supp. 23-3301 is constitutional.

And when we go further and read the entire article and not just this statute in isolation, we see that the Legislature has very carefully established a system for grandparents to seek and secure visitation with their grandchildren and has given them the tools to do so. For example, the Legislature set out in K.S.A. 2019 Supp. 23-3302

11

how to modify and enforce such orders. Then, in K.S.A. 2019 Supp. 23-3303, the Legislature states that grandparents can file an action seeking to enforce their visitation rights in the county where the children reside. If the Legislature wanted to limit visitation to divorce cases only, then this provision is surplusage. If it was the intent to so limit, then the statute would specify the motion would be filed in the county where the divorce case is filed. The article even includes a provision for attorney fees in K.S.A. 2019 Supp. 23-3304. We hold that these added laws are not surplusage, they show a legislative policy of preserving grandparent rights, and they are not limited to divorce cases. In this article, the Legislature has given grandparents all the tools needed to enforce their visitation rights, not limit them.

All of this leads us to hold that the 2011 codification and the 2012 amendment did not restrict grandparent visitation to divorce cases as the panel in *T.N.Y.* held. In its view, grandparents lost visitation rights in 2011 and 2012. By adopting a narrow reading of an isolated statute, the panel chose an interpretation of that statute that rendered it violative of the Equal Protection Clause. In our view, that should be the last resort for a court when it is interpreting a statute.

Our Supreme Court has given us clear instructions about interpreting our statutes. An appellate court presumes statutes are constitutional and must resolve all doubts in favor of a statute's validity. Further, the appellate court must interpret a statute in a manner rendering it constitutional if there is any reasonable construction that will maintain the Legislature's apparent intent. A statute must clearly violate the constitution before it may be struck down. See *State v. Gonzalez*, 307 Kan. 575, 575, 412 P.3d 968 (2018).

This guidance from our Supreme Court is an example of the constitutional avoidance canon of statutory interpretation mentioned by William Eskridge in his

seminal work, *Interpreting Law: A Primer on How to Read Statutes and the Constitution* 310 (2016). According to Eskridge, there are three analytical steps to the canon:

1. [If the] statute is ambiguous: it can mean either A or B.
2. Interpretation A would violate the Constitution, but Interpretation B would not.
3. *Therefore,* the Court should choose Interpretation B.

See *United States v. Davis*, 588 U.S. __, 139 S. Ct. 2319, 2350, 204 L. Ed. 2d 757 (2019) (Kavanaugh, J., dissenting).

So we choose to try to interpret the statues dealing with grandparent visitation in Kansas in a way that it does not violate the Equal Protection Clause. By doing so, we are following the directions of our Supreme Court in *Gonzalez*, as well as the avoidance canon. In our view, under subsection (b), a grandparent can file an independent action for visitation in the county where the child resides. When such an action is filed, a district court may grant reasonable visitation upon finding it is in the child's best interests and when a substantial relationship between the child and the grandparent has been established. We note that this interpretation was suggested to the *T.N.Y* panel but rejected without much comment.

The grandparents in *T.N.Y.* argued that the statute could be interpreted as constitutional:

"[T]he Grandparents argue that it would be reasonable to read the current statute to provide for grandparent visitation as it did prior to its 2012 amendment. Although this language is appealing in light of the legislative history of the amendment, such a reading of the current version of the statute would require us to ignore our directive from the Kansas Supreme Court to strictly construe third-party visitation statutes. Moreover, a fair reading of the statute reveals that subsection (b) does not provide a statutory right to grandparents in paternity actions to seek visitation. Rather, that subsection provides the findings that a district court is required to make in order to grant visitation to a

grandparent. If the legislature intended subsection (b) to broadly permit grandparent visitation in a variety of actions, subsection (a) would be superfluous. [Citation omitted.]" 51 Kan. App. 2d at 963.

By reading the statute in isolation, the *T.N.Y.* panel decided that the plain language of subsection (b) of the statute does not provide a statutory right for grandparent visitation in paternity cases. This interpretation ignores important sources of the law.

The history and source of the statute explains our point. The three subsections of this statute arise from a compilation of several statutes. Subsection (a), dealing with divorces, comes from K.S.A. 2019 Supp. 23-3301 which itself derived from its prior iteration in K.S.A. 60-1616(b). Likewise, K.S.A. 38-129, the original general law dealing with grandparent visitation, where there is a history of a substantial relationship and adoption cases, became K.S.A. 2011 Supp. 23-3302. That law, in 2012, moved to its present home in K.S.A 2019 Supp. 23-3301(b) and (c). For reference, we quote from the old statutes:

> "(a) The district court may grant the grandparents of an unmarried minor child reasonable visitation rights to the child during the child's minority upon a finding that the visitation rights would be in the child's best interests and when a substantial relationship between the child and the grandparent has been established.

> "(b) The district court may grant the parents of a deceased person visitation rights, or may enforce visitation rights previously granted, pursuant to this section, even if the surviving parent has remarried and the surviving parent's spouse has adopted the child. Visitation rights may be granted pursuant to this subsection without regard to whether the adoption of the child occurred before or after the effective date of this act." K.S.A. 38-129; L. 1984, ch. 152, § 1.

We recite these old laws so that we can track their language and show how it is now repeated in our present law.

14

The language of the laws did not change when they were moved to a new Code. That is the main reason why we believe that grandparents gained nothing by the 2011 codification and the 2012 amendment. Nor did they lose anything. If grandparents could file an independent action seeking visitation with their grandchildren before the amendment, they could file an independent action after the 2012 amendment. And that is where we differ with the district court in this case.

We recognize that the district court was duty bound to follow *T.N.Y.*, but we are not. To us, *T.N.Y.* is horizontal precedent and not binding. "[O]ne panel of the Court of Appeals may disagree with a previous panel of the same court." *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018).

Even though we disagree with the panel's holding in *T.N.Y.*, that does not mean the district court erroneously dismissed the Frosts' petition. Dismissal is proper, but for a different reason. Before we address that, we must look at the second case that the Frosts complain about—*Baker.*

One of the issues the *Baker* panel had to resolve was whether the district court correctly denied a motion for grandparent visitation in a PFA case. The panel rejected the grandparents' argument that the effect of the *T.N.Y.* ruling opened the door for grandparents:

> "Based on *T.N.Y.*, the grandparents argue that K.S.A. 2015 Supp. 23-3301(a) now applies to *all* types of actions that could involve child-custody and visitation matters. We disagree and conclude that the *T.N.Y.* case does not apply beyond its own setting— namely, a request for grandparent visitation within a *paternity* case." *Baker*, 52 Kan. App. 2d at 910.

We have no quarrel with this ruling because the only pending actions in which grandparents can intervene are divorce cases, according to K.S.A. 2019 Supp. 23-

15

3301(a). There is no mention in the law of intervening in protection from abuse actions. There was no statute before or after 2012 that allowed intervention in any cases other than divorces.

To sum up, we have explained why we disagree with the reason given by the district court in dismissing the Frosts' petition. We simply cannot interpret K.S.A. 2019 Supp. 23-3301 as the *T.N.Y.* panel did. Our ruling is limited only to the issue before us—the reasons for dismissing a grandparent visitation petition under these circumstances.

*There is a good reason to dismiss this petition.*

We find no error in the district court dismissing the Frosts' petition. We hold there is a different reason that compels the dismissal and it was raised by DCF:  ripeness.

In Kansas, judicial power extends only to cases and controversies, and there is no justiciable dispute between the Frosts and DCF. See *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 896-98, 179 P.3d 366 (2008). Because there was no actual controversy, the district court properly declined the Frosts' invitation to make such a ruling in order to "persuade" the juvenile court to also grant visitation. The task of persuading courts is left to the parties and their able advocates, not other courts.

By law, orders arising under the revised Kansas Code for Care of Children proceedings take precedence over orders from other courts. K.S.A. 2019 Supp. 38-2201(a). Grandparent visitation is not a ripe issue for these parties because the CINC court's no-contact order governs until either the CINC case closes or the order is modified. K.S.A. 2019 Supp. 38-2201(a). Because the CINC court's order takes precedence, there is nothing DCF could do even if the district court here had ordered visitation. And once the CINC cases conclude, DCF will no longer have custody of the

16

children. So the injury the Frosts allege does not appear attributable to any actions by DCF. This brings a recent ruling into play.

Our Supreme Court has ruled that a court could not have decided a case if the plaintiff could not show a causal connection between their injury and the defendant's conduct, or if the dispute was not yet fixed and final, but instead contingent or hypothetical. See *State v. Roat*, 311 Kan. 581, 600-01, 466 P.3d 439 (2020). The Frosts have not shown that DCF, by obeying a court's order has caused them injury. Any order made by the district court here would, by law, be ineffectual. And a ruling by the district court granting visitation could only be contingent or hypothetical. Thus, under the ruling in *Roat*, the district court could not have decided this case. That is why dismissal was a proper remedy.

In *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015), our Supreme Court directed that an appellate court would uphold a district court decision that reaches the correct result for the wrong reason. That is what we do here.

Affirmed.