No. 113,099

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

T.N.Y.,
a minor child by and through
his natural father and next friend,
Z.H.,
*Appellees*,

v.

E.Y.,
*Appellee*.

(L.D. and R.D.)
*Appellants*.

SYLLABUS BY THE COURT

1.

Interpretation of a statute is a pure question of law over which appellate courts exercise de novo review.

2.

The most fundamental rule of statutory construction is that the legislature's intent governs if that intent can be ascertained. Courts must initially attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, courts do not resort to statutory construction nor do they speculate about the legislature's intent.

3.

The plain and unambiguous language of K.S.A. 2014 Supp. 23-3301(a) provides that district courts have the authority in dissolution of marriage actions to grant

reasonable visitation to grandparents when a substantial relationship between the minor child and the grandparent has been established and the visitation rights would be in the child's best interests.

4.

In matters involving legislation, courts do not have the liberty to enact their view of wise public policy or to correct inadvertent mistakes made by the legislature.

5.

Although generally constitutional issues asserted for the first time on appeal are not properly before an appellate court for review, there are several exceptions to the rule. These exceptions include: (1) the newly asserted theory involves a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the district court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision.

6.

Courts must presume statutes are constitutional and are obligated to resolve all doubts in favor of validity.

7.

Although all statutes must have a rational basis, statutes that distinguish among people on quasi-suspect classes—such as gender and legitimacy—must be substantially related to an important legislative or governmental objective. That is to say, the justification for the statute's differential treatment must be exceedingly persuasive.

8.

The 2012 amendment to K.S.A. 2011 Supp. 23-3301(a) eliminated the district court's long-held authority to order grandparent visitation of minor children whose parents never married while continuing to authorize courts to order grandparent visitation of children whose parents have been married. The statute, therefore, discriminates based on a child's legitimacy.

9.

Because the 2012 amendment to K.S.A. 2011 Supp. 23-3301(a) does not substantially further an important legislative or governmental interest, it violates the Equal Protection Clause of the United States Constitution and the appropriate remedy is to strike the offending language from subsection (a).

Appeal from Wyandotte District Court; KATHLEEN M. LYNCH, judge. Opinion filed September 25, 2015. Reversed and remanded with directions.

*Catherine A. Zigtema*, of Law Office of Kate Zigtema LC, of Lenexa, for appellants, maternal grandparents, L.D. and R.D.

*J. Shane Rockey*, of Rockey & Stecklein, Chtd., of Kansas City, for appellee.

Before PIERRON, P.J., BRUNS and SCHROEDER, JJ.

BRUNS, J.:  The maternal grandparents (the Grandparents) of a minor child appeal from a district court order dismissing their motion for grandparent visitation because it was filed in a paternity action rather than in a divorce proceeding. Although the child's mother (the Mother) has participated in this appeal, the child's father (the Father) has chosen not to do so. We find that the district court properly interpreted the plain and unambiguous language of K.S.A. 2014 Supp. 23-3301(a) as limiting the authority of a district court to grant grandparent visitation only in dissolution of marriage proceedings.

Nevertheless, we conclude that the statute—as applied—violates the equal protection rights of a child born out of wedlock. Specifically, we find that discriminating on the basis of a child's legitimacy in the context of grandparent visitation serves no important legislative or governmental purpose. Therefore, we conclude that the district court should rule upon the merits of the motion for grandparent visitation.

FACTS

On May 22, 2009, the Father petitioned the district court for determination of paternity, custody, parenting time, and support of T.N.Y. The petition alleged that the Mother had left the child to live with her parents shortly after the child's birth in 2008. At the time, T.N.Y.'s mother evidently lived in Minnesota. According to the petition, the Father and the Mother were never married to each other.

The Mother filed an answer admitting the paternity of T.N.Y. but denying that the minor child lived with her parents. Instead, the Mother claimed that she and T.N.Y. lived together in Kansas City, Kansas. On September 10, 2009, the district court entered an order determining paternity and adopting the parties' agreed parenting plan. Thereafter, on October 1, 2009, the district court ordered the Father to pay child support to the Mother on behalf of T.N.Y.

On October 22, 2014, the Grandparents filed a motion in the paternity action seeking visitation of their maternal grandchild. In the motion, the Grandparents asserted that since the child's birth, T.N.Y. and the Mother lived with them until the Mother left the home in December 2008. According to the Grandparents, the child remained with them until December 2010 and the Mother lived with them "off and on" during that time. They also claimed that in late 2010, the Mother took T.N.Y. to live with her and her new husband. The Grandparents asserted that in April 2011, the Mother and T.N.Y. returned to live with them until July 2014, when they left to live with the Mother's new boyfriend

4

in Blue Springs, Missouri. Since that time, the Grandparents claim that the Mother has refused to allow them to see T.N.Y.

The district court held a hearing on November 5, 2014. Although it is alleged that the motion was discussed, there is no transcript of the hearing in the record on appeal. Nevertheless, on December 3, 2014, the district court filed a journal entry denying the Grandparents' motion for visitation. In doing so, the district court appropriately looked to the plain language of K.S.A. 2014 Supp. 23-3301(a) and determined that—on its face— the statute only permits a motion for grandparent visitation in an action involving the dissolution of marriage—not in a paternity action.

On appeal, the Mother submitted a brief on March 27, 2015, in which she requested attorney fees from the Grandparents for the first time. In support of this request, the Mother argued that she was entitled to recover her attorney fees because the Grandparents' brief failed to comply with Supreme Court Rules 6.02 (2014 Kan. Ct. R. Annot. 40) and 6.07(a) (2014 Kan. Ct. R. Annot. 50). Moreover, on April 1, 2015, the Grandparents filed a motion to strike the portions of the Mother's brief that requests attorney fees, contending that the Mother was required to make such a request by motion under Supreme Court Rule 7.07(b) (2014 Kan. Ct. R. Annot. 70). On April 22, 2015, the Mother's request for attorney fees was denied for failing to follow Rule 7.07(b)(2).

ANALYSIS

*Adequacy of the Appellants' Brief*

Initially, the Mother argues on appeal that the Grandparents failed to comply with Supreme Court Rule 6.02 governing briefs and asks that we dismiss this appeal under Rule 5.05 (2014 Kan. Ct. R. Annot. 37). Rule 5.05(a) states that "[a]n appellate court may dismiss an appeal due to a substantial failure to comply with these rules . . . *on motion* of

a party with at least 14 days' notice to the appellant." (Emphasis added.) (2014 Kan. Ct. R. Annot. 37). Because the Mother has herself failed to abide by the appropriate rule in making her request, it is denied. We also reject the Mother's argument claiming that this court lacks jurisdiction over this appeal in light of the alleged errors in the Grandparents' brief. See *Szoboszlay v. Glessner*, 233 Kan. 475, 481, 664 P.2d 1327 (1983) (stating that procedural requirements of the rules are not jurisdictional); *Newcastle Homes v. Thye*, 44 Kan. App. 2d 774, 794-95, 241 P.3d 988 (2010).

Thus, we turn to the merits of the issues presented on appeal.

*The Grandparent Visitation Statute*

The Grandparents' first contention on appeal is that the district court erred by finding that it did not have the authority as a matter of law to grant them visitation in a paternity action pursuant to K.S.A. 2014 Supp. 23-3301(a). Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Cady v. Schroll*, 298 Kan. 731, 734, 317 P.3d 90 (2014). Moreover, the most fundamental rule of statutory construction is that the legislature's intent governs if that intent can be ascertained. *Cheney v. Poore*, 301 Kan. 120, 125, 339 P.3d 1220 (2014).

We must attempt to determine legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, we are not to resort to statutory construction nor should we speculate about the legislature's intent. *Cady*, 298 Kan. at 738-39. Generally, the statutory language is "the primary consideration in ascertaining the intent of the legislature because the best and only safe rule for determining the intent of the creators of a written law is to abide by the language that they have chosen to use." *Stanley v. Sullivan*, 300 Kan. 1015, 1017, 336 P.3d 870 (2014). Furthermore, third-party visitation statutes must be strictly construed.

See *Skov v. Wicker*, 272 Kan. 240, 249, 32 P.3d 1122 (2001); *State ex rel. Secretary of Dept. of S.R.S. v. Davison*, 31 Kan. App. 2d 192, Syl. ¶ 3, 64 P.3d 434 (2002).

At common law, grandparents had no legal right to visitation. See *In re Hood*, 252 Kan. 689, 691, 847 P.2d 1300 (1993); Elrod, Child Custody Practice & Procedure § 7:6 (2015). Over the years, however, "there had been a steady trend toward recognizing grandparent visitation rights if the visitation is found to be in the child's best interests." Today, "all fifty states recognize grandparent visitation in some circumstances." Elrod, 2 Kansas Law and Practice, Kansas Family Law § 13.10 (2014).

In 1971, Kansas enacted its first grandparent visitation statute. At the time, such visitation was limited to cases in which either the father or mother of a minor child was deceased. L. 1971, ch. 149, sec. 1; see also *Browning v. Tarwater*, 215 Kan. 501, 503, 524 P.2d 1135 (1974). Thirteen years later, the legislature significantly expanded the scope of grandparent visitation in Kansas by amending K.S.A. 38-129 to permit grandparent visitation upon finding that there was a substantial relationship with the child and that it was in the best interests of the minor child. L. 1984, ch. 152, sec. 1.

It is important to recognize that in *Troxel v. Granville*, 530 U.S. 57, 71-72, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), the United States Supreme Court found that the best interests of the child standard alone was insufficient to order grandparent visitation. But the Kansas Supreme Court subsequently found that K.S.A. 38-129 complied with the requirements of *Troxel* because it provided sufficient due process protections to parents as long as the burden of proof remained upon the grandparents seeking visitation to show that the visitation was in the child's best interests and that they had a substantial relationship with the child. See *Kansas Dept. of SRS v. Paillet*, 270 Kan. 646, 659-60, 16 P.3d 962 (2001). Thus, district courts continued to have the authority to award grandparent visitation in paternity actions.

7

From 1984 to 2011, K.S.A. 38-129 provided:

"(a) The district court may grant the grandparents of an unmarried minor child reasonable visitation rights to the child during the child's minority upon a finding that the visitation rights would be in the child's best interests and when a substantial relationship between the child and the grandparent has been established.

"(b) The district court may grant the parents of a deceased person visitation rights, or may enforce visitation rights previously granted, pursuant to this section, even if the surviving parent has remarried and the surviving parent's spouse has adopted the child. Visitation rights may be granted pursuant to this subsection without regard to whether the adoption of the child occurred before or after the effective date of this act."

Similarly, prior to 2011, K.S.A. 60-1616(b) granted district courts the same authority in dissolution of marriage actions.

The 2011 Kansas Legislature recodified the paternity and dissolution of marriage statutes into the new Family Law Code found in Chapter 23 of the Kansas Statutes Annotated. As part of the recodification, K.S.A. 38-129 was transferred to K.S.A. 2011 Supp. 23-3302 and K.S.A. 60-1616(b) was transferred to K.S.A. 2011 Supp. 23-3301. See L. 2011, ch. 26, secs. 29, 47. Under the new statute, district courts continued to have the authority to grant grandparent visitation in both paternity actions and dissolution of marriage actions. In fact, the new language of K.S.A. 2011 Supp. 23-3302 was identical to the language previously found in K.S.A. 38-129.

The following year, the Kansas Legislature amended the new Family Law Code, including K.S.A. 2011 Supp. 23-3301 and K.S.A. 2011 Supp. 23-3302. The language that was previously found in K.S.A. 2011 Supp. 23-3302 was moved to subsections (b) and (c) of K.S.A. 2012 Supp. 23-3301. See L. 2012, ch. 162, sec. 54. As we will discuss in more detail in the next section of this opinion, the legislative history indicates that these

8

amendments to the Family Law Code were to be technical and not substantive in nature. See memorandum from Joseph Molina, Kansas Bar Association, to Chairman Lance Kinzer and Members of the House Judiciary Committee, March 13, 2012. Nevertheless, the qualifying language added at the beginning of K.S.A. 2012 Supp. 23-3301(a) appears on its face to restrict the district court's authority to award grandparent visitation to dissolution of marriage actions.

K.S.A. 2014 Supp. 23-3301 currently reads as follows:

"(a) In an action under article 27 of chapter 23 of the Kansas Statutes Annotated, and amendments thereto, grandparents and stepparents may be granted visitation rights.

"(b) The district court may grant the grandparents of an unmarried minor child reasonable visitation rights to the child during the child's minority upon a finding that the visitation rights would be in the child's best interests and when a substantial relationship between the child and the grandparent has been established.

"(c) The district court may grant the parents of a deceased person visitation rights, or may enforce visitation rights previously granted, pursuant to this section, even if the surviving parent has remarried and the surviving parent's spouse has adopted the child. Visitation rights may be granted pursuant to this subsection without regard to whether the adoption of the child occurred before or after the effective date of this act." (Emphasis added.)

It is undisputed that Article 27 of Chapter 23 encompasses only actions involving the dissolution of marriage. See K.S.A. 2014 Supp. 23-2701 *et seq.* On the other hand, Article 22 of Chapter 23—which is not mentioned in K.S.A. 2014 Supp. 23-3301— applies to actions to determine paternity. See K.S.A. 2014 Supp. 23-2201 *et seq.* Thus, we conclude that the district court was correct in finding that the plain and unambiguous language of K.S.A. 2014 Supp. 23-3301 restricts grandparent visitation to dissolution of marriage proceedings.

9

Notwithstanding, the Grandparents argue that it would be reasonable to read the current statute to provide for grandparent visitation as it did prior to its 2012 amendment. Although this language is appealing in light of the legislative history of the amendment, such a reading of the current version of the statute would require us to ignore our directive from the Kansas Supreme Court to strictly construe third-party visitation statutes. Moreover, a fair reading of the statute reveals that subsection (b) does not provide a statutory right to grandparents in paternity actions to seek visitation. Rather, that subsection provides the findings that a district court is required to make in order to grant visitation to a grandparent. If the legislature intended subsection (b) to broadly permit grandparent visitation in a variety of actions, subsection (a) would be superfluous. See *Stanley*, 300 Kan. at 1021 ("This court presumes that the legislature does not intend to enact superfluous or redundant legislation.").

In matters governed by legislation, we are not free to simply enact our view of wise public policy or even to correct what we believe may be an inadvertent mistake by the legislature. Rather, the Kansas Supreme Court requires that we leave such matters to the legislature itself to resolve. See *In re Marriage of Hall*, 295 Kan. 776, 784, 286 P.3d 210 (2012). In light of the directive to strictly construe third-party visitation statutes, we are obligated to decline the Grandparents' request to look beyond the statute's plain language in this case. We, therefore, conclude that the current version of K.S.A. 2014 Supp. 23-3301 only authorizes a district court to grant grandparent visitation in proceedings involving the dissolution of a marriage.

*Equal Protection of Children*

The Grandparents also contend that even if K.S.A. 2014 Supp. 23-3301 no longer authorizes courts to order grandparent visitation in paternity actions, treating children whose parents have never been married to each other differently than children whose

parents have been married to each other violates the Equal Protection Clause of the Fourteenth Amendment. It is important to note, however, that this issue was not presented to the district court, and the Grandparents raise it for the first time on appeal. Accordingly, we must initially decide whether this issue is properly before us on appeal.

Generally, constitutional issues asserted for the first time on appeal are not properly before an appellate court for review. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 729, 317 P.3d 70 (2014). But there are several exceptions to the rule. These exceptions include: (1) the newly asserted theory involves a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the district court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), *cert. denied* 555 U.S. 1778 (2009). Pursuant to Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 40), the Grandparents ask this court to consider the issue because doing so is necessary to serve the ends of justice and because the issue involves a question of law.

Because the 2012 amendment to K.S.A. 2011 Supp. 23-3301 appears to have stripped away the power of district courts to grant grandparent visitation in paternity actions—a power that they held for more than 40 years in Kansas—while continuing to grant district courts the authority to allow grandparent visitation in dissolution of marriage actions, we find the resolution of this issue to be necessary to serve the ends of justice. Further, because the statute in question makes a distinction in the authority of district courts to grant grandparent visitation based on the legitimacy of the child, a quasi-suspect class is involved and a heightened level of judicial review is required. See *Clark v. Jeter*, 486 U.S. 456, 461, 108 S. Ct. 1910, 100 L. Ed. 2d 465 (1988); *Pierre v. Holder*, 738 F.3d 39, 50 (2d Cir. 2013). Thus, we conclude that this issue is appropriately before us on appeal.

11

The Fourteenth Amendment to the United States Constitution provides in part that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "The guiding principle of an equal protection analysis is that similarly situated individuals should be treated alike." *In re K.M.H.*, 285 Kan. 53, 73, 169 P.3d 1025 (2007), *cert. denied* 555 U.S. 937 (2008). Courts are to presume statutes are constitutional, and all doubts must be resolved in favor of validity. *State v. Seward*, 296 Kan. 979, 981, 297 P.3d 272 (2013).

In determining whether statutes violate the Equal Protection Clause, there are three levels of review—strict scrutiny, intermediate scrutiny, and the rational basis test. See *State v. Salas*, 289 Kan. 245, Syl. ¶ 3, 210 P.3d 635 (2009). While all statutes must have a rational basis, statutes involving classifications affecting fundamental rights or involving classifications by race, national origin, or alienage must be able to survive the most scrupulous review—strict scrutiny. *Plyler v. Doe*, 457 U.S. 202, 216-17, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982). Statutes distinguishing among people on quasi-suspect classes such as gender and legitimacy, however, must be able to survive an intermediate level of review—heightened scrutiny. In other words, such statutes must be "substantially related to an important governmental objective." *Clark*, 486 U.S. at 461. This requires the justification for the statute's differential treatment to be "exceedingly persuasive." *United States v. Virginia*, 518 U.S. 515, 532-33, 116 S. Ct. 2264, 135 L. Ed. 2d 735 (1996).

As indicated above, the 2012 amendment to K.S.A. 2011 Supp. 23-3301(a) eliminated the authority that district courts had exercised to one degree or another for 41 years to order grandparent visitation of children whose parents were never married to each other while continuing to authorize courts to order grandparent visitation of children whose parents have been married to each other. See Atkinson, *Shifts in the Law Regarding the Rights of Third Parties to Seek Visitation & Custody of Children*, 47 Fam. L. Q. 1, 20 (2013) (stating that Kansas does not specifically provide for visitation of

12

children born out of wedlock or who are the subject of paternity proceedings); see also *Cheney*, 301 Kan. at 127 (describing the statute as granting stepparents and grandparents "visitation rights of minor child in divorce cases"). In other words, the 2012 amendment to K.S.A. 2011 Supp. 22-3301(a) makes a distinction between those children who are considered by law to be legitimate and those children who are considered to be illegitimate. Accordingly, we must apply a heightened scrutiny standard of review and determine whether the 2012 amendment "substantially furthers a legitimate legislative purpose." *Village Villa v. Kansas Health Policy Authority*, 296 Kan. 315, 324, 291 P.3d 1056 (2013).

As early as 1968, the United States Supreme Court recognized that illegitimate children "are clearly 'persons' within the meaning of the Equal Protection Clause of the Fourteenth Amendment" and concluded that "it is invidious to discriminate against them." *Levy v. Louisiana*, 391 U.S. 68, 70-72, 88 S. Ct. 1509, 20 L. Ed. 2d 436 (1968). Likewise, in a case involving a biological mother and her same-sex partner agreeing to have children by artificial insemination, the Kansas Supreme Court recognized the constitutional rights of children to receive equal treatment under the law. See *Frazier v. Goudschaal*, 296 Kan. 730, 295 P.3d 542 (2013). Specifically, our Supreme Court found that "the constitutional rights of the children" must be considered in addition to those of the parents. 296 Kan. at 755 ("Accordingly, *the constitutional rights of the children*, as well as those of the parents, must inform our determination of the validity of a coparenting agreement."). Similarly, we find that it is appropriate for us to consider the constitutional rights of children whose parents never married—in addition to those of married parents—in determining whether the 2012 amendment to K.S.A. 2011 Supp. 23-3301(a) substantially furthers an important governmental interest.

In the present case, we have a difficult time finding that the 2012 amendment advances *any* legislative purpose, much less that it substantially furthers an important or legitimate one. Although the Mother suggests that it makes sense to allow district courts

13

to order grandparent visitation in dissolution of marriage actions but not in paternity actions, she does not explain why this is so. Moreover, she makes no attempt to show that the 2012 amendment served an important or legitimate governmental purpose.

Our review of the legislative history relating to the 2012 amendment reveals there was no intent to make any substantive changes to the Kansas Family Law Code. The amendment to K.S.A. 2011 Supp. 23-3301 began as part of House Bill 2741, which was proposed by the Kansas Judicial Council as "clean-up amendments to the recodified domestic relations statutes. (http://www.kansasjudicialcouncil.org/2012Legislation.shtml) Further, the Kansas Judicial Council submitted written testimony in support of House Bill 2741's amendment to K.S.A. 2011 Supp. 23-3301—as well as an amendment to K.S.A. 2011 Supp. 23-3302—which stated:  "The amendments contained in these two sections merely reorder the provisions so that 23-3301 authorizes the court to grant visitation rights to grandparents and stepparents, while 23-3302 deals with modification of such orders. *The changes are not substantive*." (Emphasis added.) Memorandum from Ron Nelson, Kansas Judicial Council, to House Judiciary Committee, March 13, 2012. Similarly, the Kansas Bar Association submitted written testimony explaining that "HB 2741 was introduced as a measure to correct any oversights that may have occurred" when implementing Senate Bill 24 in the previous year. Memorandum from Joseph Molina, Kansas Bar Association, to Chairman Lance Kinzer and Members of the House Judiciary Committee, March 13, 2012.

Although House Bill 2741 died in the Senate Judiciary Committee after passing the House, it was resurrected in Senate Bill 304—which was introduced on March 1, 2012. The Senate Bill dealt mainly with the implementation of a certified batterer intervention program. But a conference committee later included the amendments to K.S.A. 2011 Supp. 23-3301 and K.S.A. 2011 Supp. 23-3302 in Senate Bill 304. In fact, the Kansas Judicial Council's website provides that Senate Bill 304 "contains provisions from [HB 2741] proposing clean-up amendments to the recodified domestic relations

14

statutes." (http://www.kansasjudicialcouncil.org/2012Legislation.shtml) The Governor ultimately signed Senate Bill 304 into law on May 25, 2012. In summarizing Senate Bill 304, the Kansas Legislative Research Department simply states that "the bill fixes *non-substantive* errors and omissions in 2011 SB 24, which recodified several domestic relations statutes." (Emphasis added.)

In light of the fact that the history of the 2012 amendment reveals that the Kansas Legislature did not intend to make substantive changes to K.S.A. 2011 Supp. 23-3301 and the Mother has failed to offer any legislative purpose for treating grandparent visitation differently in paternity actions and actions for the dissolution of marriage, we find that amendment does not substantially advance an important or legitimate governmental interest. As such, we find that the 2012 amendment to K.S.A. 2011 Supp. 23-3301(a)—limiting grandparent visitation to dissolution of marriage proceedings—is unconstitutional because it violates the equal protection rights of children whose parents never married. Because we find—as previously discussed—that the legislature did not intend to make any substantive changes, striking the offending language from the 2012 amendment is the appropriate remedy. See *State v. Limon*, 280 Kan. 275, 306, 122 P.3d 22 (2005) (striking offending language from statute that violated equal protection by permitting the State to punish sodomy between adults and children of the opposite sex less severely than sodomy between adults and children of the same sex); *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 913, 179 P.3d 366 (2008) (severance provision not prerequisite for severing provision).

*Attorney Fees*

After this court denied the Mother's motion for attorney fees on appeal, the Grandparents filed a motion seeking to recover their attorney fees and costs on appeal. In their motion, they argue that they are entitled to attorney fees because the Mother did not agree to a motion for summary disposition reversing the judgment of the district court

and remanding the case for factual findings. The mother filed a response on June 17, 2015, asserting that the district court was without authority to grant attorney fees since it had no jurisdiction to entertain the motion for grandparent visitation. The Mother also argued that in light of the district court's ruling and the lack of any provision granting grandparent visitation, she had a good faith basis to decline the Grandparents' settlement offers.

In this case, K.S.A. 2014 Supp. 23-3304 provides the authority to award attorney fees, and Rule 7.07(b) (2014 Kan. Ct. R. Annot. 70) establishes the procedure for seeking and awarding appellate attorney fees. K.S.A. 2014 Supp. 23-3304 states: "Costs and reasonable attorney fees shall be awarded to the respondent in an action filed pursuant to K.S.A. 2014 Supp. [23-3301] *et seq.*, and amendments thereto, unless the court determines that justice and equity otherwise require." "The legislature clearly intended that the petitioner (grandparents) pay the costs and the attorney fees unless the trial court specifically finds that justice and equity require otherwise." *In re Cathey*, 38 Kan. App. 2d 368, 377, 165 P.3d 310 (2007) (Green, J., concurring).

We find that it was reasonable for the Mother to decline their request to settle the case because she had prevailed before the district court and properly argued on appeal that the plain language of K.S.A. 2014 Supp. 23-3301(a) precludes grandparent visitation in paternity actions. Moreover, K.S.A. 2014 Supp. 23-3304 provides that the Mother—not the Grandparents—would typically receive reasonable attorney fees when a motion for grandparent visitation has been filed. We, therefore, deny the Grandparents' request for attorney fees.

CONCLUSION

The district court correctly interpreted K.S.A. 2014 Supp. 23-3301(a) to limit grandparent visitation to only dissolution of marriage actions in light of the 2012

16

amendment to the statute. However, the Grandparents did not raise the equal protection argument presented on appeal to the district court. As such, the district court had no opportunity to rule on this issue. Nevertheless, we find that it is appropriate to consider the constitutional issue on appeal and find that the limitation in subsection (a) does not substantially further a legitimate or important legislative purpose. We, therefore, find that the language added to K.S.A. 2011 Supp. 23-3301(a) in 2012 violates the Equal Protection Clause of the United States Constitution. Accordingly, we hereby strike the offending language from K.S.A. 2014 Supp. 23-3301(a)—specifically the words: "In an action under article 27 of chapter 23 of the Kansas Statutes Annotated, and amendments thereto"—and we refer this matter back to the district court to rule on the merits of the motion for grandparent visitation.

Reversed and remanded with directions.

17